**Norman SIMMONS,
Petitioner–Appellant,**

v.

**Edward F. REYNOLDS, Superintendent, Oneida Correctional Facility, and the People of the State of New York, Respondents–Appellees.**

**No. 1499, Docket 89–2128.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1989.

Decided March 12, 1990.

* Editor's Note: Changes have been incorporated    into the opinion.

Lisamichelle Davis, New York City (Sullivan & Cromwell, Philip L. Graham, Jr., of counsel), for petitioner-appellant.

Amy Appelbaum, Brooklyn, N.Y., Asst. Dist. Atty. of Kings County (Elizabeth Holtzman, Dist. Atty., Kings County, Barbara D. Underwood, Shulamit Rosenblum, Asst. Dist. Attys., of counsel), for respondents-appellees.

Before NEWMAN, PRATT and MAHONEY, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Norman Simmons, a New York State prisoner, appeals from a judgment that denied his petition for a writ of habeas corpus, 28 U.S.C. § 2254, despite the district court's finding that the six-year delay in hearing the appeal of his conviction had violated his constitutional rights. The United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge*, determined that because Simmons's state appeal had been heard and affirmed before the federal court issued its order, Simmons's incarceration had become lawful. Thus, there was no basis on which to grant habeas relief and order Simmons's release from custody.

Simmons claims that the finding of a constitutional violation necessarily entitles him to a grant of the petition and release from custody. Defendants argue that Simmons's appeal should be denied either as moot or unexhausted, and alternatively on the merits, because his rights were not violated. We find that the district court did not abuse its discretion in denying the habeas petition; therefore, we affirm.

## I. BACKGROUND

In 1980 Simmons, then a juvenile, was indicted on murder and weapons charges in New York. His first trial ended in a hung jury. In May 1982 at his second trial, Simmons was convicted of second degree murder and sentenced to nine years to life. He filed a timely notice of appeal with the appellate division, second department, and was assigned counsel from the Legal Aid Society. In January 1983 Legal Aid withdrew as counsel because of a conflict of interest, and Stanley Shapiro, a panel attorney appointed under New York County Law § 722 (McKinney 1990), was assigned to represent Simmons on appeal.

Over the next five years, Shapiro failed to perfect the appeal despite frequent inquiries by Simmons, his family, and his caseworker; they also contacted Legal Aid, the Kings County district attorney's office, and the appellate division itself in their efforts to prod Shapiro into perfecting Simmons's appeal. Finally, in January 1988 the appellate division removed Shapiro and assigned Simmons a new attorney, who perfected the appeal in March 1988.

In September 1988 Simmons filed for a writ of habeas corpus in federal district court claiming that the delay of six years in

his appeal had denied him due process and effective assistance of appellate counsel. While that petition was pending, the appellate division, second department, affirmed his conviction in December 1988, more than six years after Simmons had filed his notice of appeal. *People v. Simmons*, 145 A.D.2d 516, 535 N.Y.S.2d 451 (A.D.2d Dept.1988).

Rejecting defendants' claims that Simmons's petition should be dismissed as moot or for failure to exhaust state remedies, the district court considered the petition on its merits. In a well-reasoned opinion, *Simmons v. Reynolds*, 708 F.Supp. 505 (E.D.N.Y.1989), Judge Nickerson held that Simmons had been denied due process because the six-year delay had deprived him of his right to a speedy appeal and had denied his right to be provided with effective assistance of counsel on appeal. Despite these two due process violations, Judge Nickerson refused to grant habeas relief, reasoning that since the state had by then affirmed Simmons's conviction, his incarceration was now made legal. Thus, no basis remained for the drastic relief Simmons had requested: release from custody. Judge Nickerson did, however, grant Simmons leave to amend his complaint to recast it as a § 1983 action for damages. The time to amend has expired and Simmons has not filed an amended complaint. He has elected instead to commence a separate § 1983 action. Since Simmons has severed the civil rights claim from the habeas petition, this action is final and we consider the problem only in the context of the denial of his habeas petition.

## II. DISCUSSION

The significant issue on appeal is whether the denial of due process through excessive delay of Simmons's appeal through the state courts entitles him to release. Defendants argue, first, for dismissal on grounds of mootness and failure to exhaust state remedies; second, they contend that the excessive delay of Simmons's appeal did not infringe his due process rights. We briefly address the threshold arguments and then turn to the thornier issue of whether Simmons should be released from custody.

### A. *The Defendants' Contentions*

■ The defendants contended in the district court and argue here that the affirmance of his conviction by the appellate division renders Simmons's petition moot. The district court rejected that argument, as do we.

A state court's hearing of an appeal does not moot a habeas petition based on a claimed denial of due process of the petitioner's right to appeal because it does not resolve the fundamental issue raised: whether delay or ineffective assistance of counsel violated the petitioner's right to an adequate and effective appeal. *Evitts v. Lucey*, 469 U.S. 387, 400–05, 105 S.Ct. 830, 838–41, 83 L.Ed.2d 821 (1985). Even where the petitioner seeks release from custody based on a denial of his right to appeal, affirmance of the conviction does not moot the habeas petition. *Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir.1988) ("a remedy which is still available to him even though his appeal has at last been decided"). Thus, despite his appeal having been decided, Simmons was entitled to a habeas determination of whether his appeal was no more than a "meaningless ritual", *Evitts*, 469 U.S. at 394, 105 S.Ct. at 834 (citation omitted), entitling him to release, to rehearing of his appeal, or to some other remedy.

■ The district court also correctly rejected defendants' exhaustion argument. A petition of habeas corpus may not be granted to a state prisoner unless he has exhausted state remedies, or no state corrective procedure exists, or there exist "circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). "[W]hen it is perfectly apparent, as it is here, that a prisoner's requests to the state court and requests to state-appointed counsel have been to no avail * * * the prisoner need not take additional steps in the state court before he may be heard in the federal courts." *Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989); *Mathis*, 851 F.2d at 614–15; *Wheeler v. Kelly*, 639 F.Supp. 1374, 1378 (E.D.N.

Y.1986), *aff'd*, 811 F.2d 133 (2d Cir.1987). Clearly, Simmons made frequent but unavailing requests to have his appeal processed; he was not required to take further futile steps in state court in order to be heard in federal court.

Finally, defendants argue here, as they did in the district court, that the excessive delay in perfecting Simmons's appeal by state-appointed counsel and the resulting six-year delay in the state's determination of his appeal did not violate his due process rights because he suffered no prejudice from the delay up to the time his appeal was finally heard. The district court disagreed that Simmons had suffered no prejudice and found that his rights had been denied. We agree with the district court.

■ Although there is no due process right to an appeal, when a state does provide for an appeal, that appeal must accord with due process, including the right to reasonably effective counsel. *Evitts*, 469 U.S. at 393–94, 105 S.Ct. at 334–35; *Jenkins v. Coombe*, 821 F.2d 158, 161 (2d Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988). Although the Supreme Court has not yet determined the test for ineffective appellate counsel, *Evitts*, 469 U.S. at 392, 105 S.Ct. at 833, it has held that nominal representation on appeal violates due process because "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Id.* at 396, 105 S.Ct. at 836.

■ For five years Shapiro neglected to perfect Simmons's appeal, leaving Simmons helpless in maneuvering through the complicated system of New York state appellate procedure by himself in his diligent but misdirected attempts to have his appeal heard. Such dilatory conduct on the part of an appointed attorney is, even generously considered, nominal representation at best. In addition, despite having been advised of Shapiro's delinquency, for five years the state never removed Shapiro nor even informed Simmons he could have Shapiro removed. *Simmons*, 708 F.Supp. at 509. It was as if Simmons had no counsel at all. Such representation is nominal and ineffective as a matter of law and violates the due process rights of the convicted client. *See Evitts*, 469 U.S. at 396, 105 S.Ct. at 836.

■ In determining whether a delay of a prisoner's appeal violates due process, we look to the *Barker* criteria, although no one factor is dispositive and all are to be considered together with the relevant circumstances. *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972); *Brooks*, 875 F.2d at 31; *Wheeler*, 639 F.Supp. at 1378; *Harris v. Kuhlman*, 601 F.Supp. 987, 993–94 (E.D.N.Y.1985). First, the length of this delay, six years, was clearly excessive; Simmons's appeal was routine and actually was perfected within two months once competent counsel finally was assigned. Second, no acceptable reason for the delay has been urged; and it was caused, at least in part, by the state court's failure to supervise its appointed attorneys and to monitor its own calendar. Third, Simmons did not waive his right to appeal; instead he made repeated efforts to assert it. Finally, Judge Nickerson found that the delay caused Simmons "appreciable" prejudice. In light of these circumstances, we agree with Judge Nickerson that the six-year delay in Simmons's appeal deprived him of his due process right to a speedy appeal.

## B. *Simmons's Request for Release*

Although he found due process violations in the excessive delay of Simmons's appeal, Judge Nickerson nevertheless denied Simmons's requested habeas relief of release from custody. He did so on the theory that disposition of the appeal while the habeas petition was pending changed Simmons's custody from illegal to legal. As relief for the temporary constitutional deprivation he granted Simmons permission to seek damages under 42 U.S.C. § 1983. We find the district judge did not err. *Cf. Wheeler*, 811 F.2d at 135.

■ Although the major function of the writ of habeas corpus has always been to obtain release from illegal custody, *Preiser v. Rodriguez*, 411 U.S. 475, 484–86, 93 S.Ct.

1827, 1833–34, 36 L.Ed.2d 439 (1973), the statute empowering federal courts to grant the writ does not provide immediate release as the only relief available to a petitioner. Instead, it directs the court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Thus district courts may fashion appropriate relief other than immediate release. *Preiser,* 411 U.S. at 487, 93 S.Ct. at 1835; *Carafas v. LaVallee,* 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968); *Wheeler,* 811 F.2d at 135.

■ Release from custody is an extraordinary remedy, especially in a delay-of-appeal case where release would in effect nullify a state court conviction on grounds unrelated to the merits of the case. The usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner. *See, e.g., Brooks,* 875 F.2d at 32; *Wheeler,* 811 F.2d at 135; *Davis v. Fulcomer,* 681 F.Supp. 137 (E.D. N.Y.1988); *Harris,* 601 F.Supp. at 994. But that customary remedy was not available here, because Simmons's conviction had already been affirmed before the district court was able to rule on his habeas petition.

■ Simmons argues he is nevertheless entitled to release because his late appeal cannot cure the prior due process violations and resulting prejudice. If Simmons's appeal, as it ultimately was handled, were constitutionally deficient we could order a new appeal. *See Jenkins,* 821 F.2d at 162 (new appeal ordered where state prisoner had no counsel on appeal). However, in this case the district court found that while there was "appreciable" prejudice, it did not so taint the fairness of the state proceedings as to deny Simmons an adequate and effective appeal. *See Simmons,* 708 F.Supp. at 510. Since Simmons's appeal was actually heard, and since he was represented by competent counsel on that appeal, any prejudice he may have suffered from the delay did not harm his ability to get a fair, albeit late, review of his conviction.

While the circumstances here are disturbing, they are not so egregious that the district court erred in denying release. Any injury remaining from those aspects of the delay that did not affect the constitutional integrity of the appeal itself is more appropriately remedied by a suit for damages. Inasmuch as the district court permitted Simmons to recast his habeas corpus petition as a suit for damages, it "dispose[d] of the matter as law and justice require", 28 U.S.C. § 2243. Since Simmons has elected to bring a separate suit for damages we of course express no views on who might be appropriate defendants, whether any defendants who acted under color of state law are entitled to immunity, or any other aspect of the merits of that suit.

## III. CONCLUSION

The problem of excessive delay of appeals from state convictions has plagued state prisoners, state courts, and federal courts too long. We would not dare to hope that the delays will simply disappear; neither can we accept the idea that nothing can be done. We hesitate to interfere in a state's criminal justice system, but where a state prisoner claims he has been denied his constitutional right to an adequate and effective appeal, we must give our attention.

Just as we are placed between sympathy for overworked, underfunded state courts and prisoners seeking habeas relief from unconstitutional delays of their appeals, so we are forced to choose between unpalatable alternatives in deciding the prisoners' habeas petitions. Unconditional release is too much—it grants a prisoner dismissal of a criminal charge on which he was properly convicted, a right he does not have. Denial of all relief is too little—it ignores the denial of effective counsel and a reasonably speedy appeal, rights a prisoner does have. The traditional choice, a conditional order requiring a state court to hear the appeal within a specific period of time or release the prisoner, is still the most appropriate

remedy: it limits the time state courts may delay; it grants a prisoner the required relief, his appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal.

Of course, federal court monitoring of every state criminal appeal would be unacceptable—such a step would offend comity and would only increase the heavy burdens already borne by the federal courts. However, prisoners need not wait indefinitely before they can bring their delay petitions to federal court. The doctrine of exhaustion of state remedies does not require a prisoner to wait six years, as Simmons did here, or even three or four years before enlisting federal aid to expedite an appeal. We do not now determine, and we may never have to define precisely, a specific interval of time after which a habeas petition based on delay of a state prisoner's appeal would excuse compliance with the federal exhaustion requirement. We suggest that an effective resolution of the dilemma would be to shorten the time delay before these petitions may be brought on without exhaustion, to expedite their processing in federal court and, where there is merit to the claim, to issue the usual conditional order. We would expect district courts to be receptive to such petitions and to deal with them expeditiously. The sooner they are disposed of, the more effective they would be in securing a prisoner's right to a prompt appellate review. Should such procedures become unduly burdensome to our district courts, there is nothing to prevent our reconsidering the now-rejected alternative of unconditional release. Given the state courts' recent progress in addressing the problem of appellate delay, "[w]e hope that the time will not come when the situation must be dealt with by prompt action in federal district court whenever it is clear that state prisoners' requests are being ignored." *Brooks,* 875 F.2d at 32.

Although hearing habeas petitions based on appellate delay may place an additional burden on our already overburdened federal courts, we cannot shirk our responsibilities to protect the constitutional rights of all citizens, including convicted prisoners.

We hope the time will come when there will be no need for federal courts to vindicate these rights. Nevertheless, as long as the state court process of appeal even occasionally fails to meet constitutional standards, the Great Writ "is available to protect indigent prisoners' rights to appeal." *Mathis,* 851 F.2d at 615.

We affirm the district court's judgment which in the exercise of discretion denied Simmons habeas relief and granted him the option to assert a civil rights claim for damages.