George SNYDER, Petitioner,

v.

Walter KELLY, Superintendent, Attica
Correctional Facility, Respondent.

No. CIV–88–1222E.

United States District Court,
W.D. New York.

July 25, 1991.

R. Nils Olsen, Jr., Buffalo, N.Y., for petitioner.

Asst. Dist. Atty. Louis A. Haremski, Buffalo, N.Y., for respondent.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Presently before the Court, in this proceeding under 28 U.S.C. § 2254, is the petitioner's application for a writ of habeas corpus. This Petition is based on the claimed excessive delay experienced by the petitioner in awaiting the perfection and the resolution of his appeal from a state court criminal conviction. For the reasons set forth below, this Court will deny the Petition. However, because this Court also finds that the petitioner well may have been deprived of certain constitutionally-secured rights, he will be permitted to recast this proceeding as an action pursuant to 42 U.S.C. § 1983 for damages arising out of claimed violations to his civil rights.

The Petition was filed with this Court November 3, 1988. By Order dated November 29, 1988 the matter was referred to Magistrate Judge Edmund F. Maxwell for review and a report containing findings of fact, conclusions of law and a proposed disposition of the case. *See* 28 U.S.C. § 636(b)(1)(B). The facts, as set forth by the Magistrate Judge in his January 14, 1991 Report and Recommendation ("R & R") are summarized below.

On August 9, 1985 in the Supreme Court of the State of New York, Erie County, the petitioner was convicted of manslaughter in the first degree and criminal possession of a weapon in the third degree. He was sentenced to seven to twenty-one years on the manslaughter count and one and a half to four years on the weapon count, such sentences to be served concurrently. It appears that a notice of appeal was filed *pro se* by the petitioner August 12, 1985. The appeal remained dormant until April 22, 1987 when the petitioner wrote to the Appellate Division inquiring about his appeal. On April 28, 1987 petitioner's re- tained trial attorney moved on the petitioner's behalf to proceed *in forma pauperis;* the petitioner made a similar application *pro se* May 9, 1987. Orders assigning the Legal Aid Bureau of Buffalo, Inc. ("the Bureau") were entered May 27, 1987 and August 4, 1987.[1]

On June 16, 1987 and again on September 17, 1987, the petitioner was informed by John Ziegler, Esq., Senior Staff Attorney of the Appeals Unit of the Bureau, that the Bureau had been assigned to represent the petitioner on his direct appeal but "[b]ecause this office is assigned to represent a great number of appellants, it will be some time before we will reach your case."

On December 14, 1987 the petitioner received a letter from Robert Hallborg, Esq., a staff attorney at the Bureau, explaining the two Appellate Division orders assigning the Bureau. Hallborg indicated that he had requested the Appellate Division to vacate the second order of assignment thereby giving the petitioner an earlier date of assignment. Hallborg went on to state:

"I have not been assigned to your case. Appeals are assigned in chronological order based on the date the appeal was assigned to Legal Aid, not, I regret to say, on the basis of the judgement [sic] date. This is most unfortunate for your case. For, though your judgement date is August 9, 1985, your appeal was not assigned to us until nearly two years later, May 27, 1987. All those cases assigned to us before yours will be perfected before yours.

"In addition, due to years to [sic] under funding, the Legal Aid Bureau has not been able to hire enough appeal attorneys to keep up with the number of appeals assigned to us. This has resulted in a severe backlog. We estimate our backlog now to be 2 1/2 years from date of assignment.

"The Legal Aid Bureau has requested from Erie County a significant increase in funding in order to hire more appeal

---

1. The two orders were the result of the two separate requests for assignment of counsel. Apparently, the Bureau initially created two separate files pertaining to this single appeal.

attorneys. We have some hope that this year our request will be granted to some extent, and that consequently we will be able to perfect appeals more quickly. We should know in January. You may want to write again then. We may have better news to give you at that time."

As stated above, the petitioner commenced the instant proceeding November 3, 1988 and on December 16, 1988 counsel was assigned to represent him herein. On April 21, 1989 an Amended Petition was filed.

On April 27, 1990 the Appellate Division affirmed petitioner's conviction. Leave to appeal to the New York Court of Appeals was denied June 22, 1990.

The petitioner's sole claim herein is that the nearly five-year delay between his filing of a notice of appeal and the Appellate Division's affirmance of his conviction was an unconstitutional denial of his due process rights. The respondent has raised three pertinent defenses—*viz.*, failure to exhaust state remedies, the inappropriateness of a habeas corpus petition, and failure to join necessary parties.

■■■ The respondent asserts that the petitioner failed to exhaust all of his state court remedies prior to bringing the instant proceeding. *See* 28 U.S.C. § 2254(b). It is clear that, where a prisoner's repeated requests—to state court and appointed counsel—to have his appeal perfected are met by failure, the prisoner need not take additional steps in state court before he may bring a federal court proceeding. *Simmons v. Reynolds ("Simmons")*, 898 F.2d 865, 867–868 (2nd Cir.1990); *see also Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989). While the petitioner herein did not make the repeated efforts shown to have been made by the petitioner in *Simmons*, this Court still finds that, for purposes of seeking federal habeas corpus relief, he

adequately exhausted his State court remedies. This petitioner was not required to bring a motion to vacate the trial court judgment, pursuant to section 440.10 of New York's Criminal Procedure Law (*i.e.*, a petition for a writ of error *coram nobis*) prior to initiating a federal proceeding. *See Mathis v. Hood*, 851 F.2d 612, 614–615 (2d Cir.1988). Indeed, it is unclear whether he even *could* make such application in the Appellate Division. *Ibid.* Even if he could, the odds are that such motion would have foundered as did his appeal. Accordingly, it appears to this Court that such efforts might well have been futile. *See* 28 U.S.C. § 2254(b) (exhaustion excused where doing so would be ineffective). Thus, and because the exhaustion doctrine is based upon comity and not jurisdiction—*see Wheeler v. Kelly ("Wheeler")*, 639 F.Supp. 1374, 1377 (E.D.N.Y.1986), *aff'd*, 811 F.2d 133 (2d Cir.1987)—, this Court finds that further exhaustion by the petitioner was not necessary.

■■■ As to the respondent's second defense—*viz.*, that a petition for a writ of habeas corpus is an inappropriate avenue for relief—, this Court finds such argument equally without merit. Clearly, the United States Court of Appeals for the Second Circuit has found habeas corpus proceedings appropriate vehicles for bringing about relief to prisoners awaiting long-delayed appeals. *See Simmons, supra*, at 870.[2]

This Court turns now to the merits of the petitioner's case. In his R & R the Magistrate Judge addressed these claims and, as set forth below, this Court agrees with his conclusions and affirms the R & R in its entirety.

■■■ In determining whether an appeal's delay rises to the level of a deprivation of constitutionally protected due process rights, the United States Court of Appeals for the Second Circuit has directed that the

---

**2.** The other defense raised in the respondent's Answer—*viz.*, failure to join necessary parties—was neither briefed by the respondent nor addressed by the Magistrate Judge in his R & R. This defense must fail because the only appropriate respondent to a habeas corpus petition by one in prison is the individual having custody of the body of the petitioner. *See* 28 U.S.C. § 2243; *see also Billiteri v. United States Bd. of Parole*, 541 F.2d 938 (2d Cir.1976). Accordingly, because this petitioner is in the custody of respondent Kelly, it was not necessary for him to join any additional parties as defendants.

factors originally set forth in *Barker v. Wingo ("Barker")*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), be applied. *See Simmons, supra*, at 868. These factors are (1) the length of the delay, (2) the reason(s) for the delay, (3) the prisoner's assertions of his right, and (4) the prejudice to the prisoner from the delay. Such factors are to be balanced—weighing the conduct of both the prisoner and the state—and no single factor is either necessary or sufficient to a finding of a deprivation. *See Barker, supra*, 407 U.S. at 533, 92 S.Ct. at 2193; *Wheeler, supra*, at 1378.

█ As to the first *Barker* factor—length of delay—the petitioner was incarcerated for nearly five years (out of a minimum sentence of seven years) before his appeal was heard. The respondent asserts that the first two years' delay (August 1985 to April 1987) was due to the petitioner's trial counsel's failure to move for *in forma pauperis* status for his client. Accordingly, asserts the respondent, blame should not fall on the Appellate Division. This Court, in agreement with the Magistrate Judge, finds that responsibility for this delay must be placed upon both counsel and the Appellate Division—the latter for failing to more closely monitor its calendar. *See Simmons, supra*, at 868. Further, even if the first two years were not included in the period of delay, the remaining nearly three-year period remains an excessive amount of time to await the resolution of an appeal. Thus, while there is no set formula for determining whether a particular delay is or is not excessive—*see e.g., Wheeler, supra*, at 1378—, it is this Court's opinion that the five-year delay in this matter was excessive. *See, e.g., Simmons, supra; Wheeler, supra.*

The second *Barker* factor—the reason for the delay—reveals that the excessive delay was due to the brobdingnagian case load of assigned counsel, as well as the inattention of the Appellate Division itself to the general problem. This Court agrees with the Magistrate Judge that neither reason provides an acceptable excuse. Although the petitioner's notice of appeal was timely filed, the Appellate Division did not act upon it for nearly two years. Only the petitioner's prodding generated any action from the Court. Subsequently, assigned counsel repeatedly informed the petitioner that, due to the Bureau's case load, his appeal would be delayed for 2 1/2 years. These reasons do not justify the delay.

As to the third *Barker* factor—the prisoner's assertion of his rights—this Court finds that the petitioner acted twice—namely, when he wrote to the Appellate Division in April 1987 inquiring as to the status of his appeal and when he initiated this habeas corpus proceeding. This Court finds that the petitioner's failure to do more can largely be excused by the fact that, once assigned counsel was obtained, the petitioner was clearly informed that his appeal would be significantly delayed. An indigent prisoner surely cannot be expected to do more to expedite his appeal when his own counsel is telling him it will take some time.

Finally, with respect to the fourth *Barker* factor—prejudice to the prisoner—, this Court finds such a delay well may have been prejudicial. Such creates an anxiety and a concern that one's appeal will be adversely affected. Whether this petitioner was prejudiced in the ultimate disposition of the appeal may not be knowable. While he has not presented any evidence of prejudice to the appeal itself, it would not strike this Court as unusual that a five-year delay would profoundly worry an individual hopefully awaiting an ultimate appellate reversal. *See Simmons v. Reynolds*, 708 F.Supp. 505, 510 (E.D.N.Y.1989), *aff'd, Simmons, supra.* Accordingly, this Court finds that the five-year delay well may have caused prejudice to the petitioner. *See Simmons, supra*, at 868.

Weighing the four *Barker* factors, this Court is strongly of the mind—in agreement with the Magistrate Judge—that the petitioner's due process rights were violated by the five-year delay in the processing of his appeal.

█ Having determined that the petitioner was deprived of his rights to due process, this Court must now determine appro-

priate relief. Because the petitioner's appeal resulted in an affirmance and because said appeal—while late—is not itself alleged to have been constitutionally deficient, the petitioner's incarceration is not unlawful. *See Cody v. Henderson ("Cody")*, 936 F.2d 715, 720 (2d Cir.1991) ("An untainted affirmance of a petitioner's state appeal * * * makes clear that the petitioner was confined pursuant to a valid judgment of conviction *throughout* the period of delay."); *see also Diaz v. Henderson ("Diaz")*, 905 F.2d 652, 653 (2d Cir.1990). Thus, short of a showing that, but for the delay, the result of the appeal would have been different, this Court must find that release from custody is inappropriate.[3] *See Mathis v. Hood*, 937 F.2d 790, 794–95 (2d Cir.1991); *see also Cody, supra*, at 719 (*"Diaz* and *Simmons* clearly stand for the proposition that unconditional release from custody is not an appropriate remedy unless [a petitioner] can demonstrate that appellate delay caused substantial prejudice to the disposition of his appeal."); *Diaz, supra*, at 653; *Simmons, supra*, at 869.[4]

 Because granting a Petition for a writ of habeas corpus has been determined to be inappropriate, this Court must find—following *Cody, Simmons*, and *Diaz*—that relief for any prejudice suffered by this petitioner is best obtained through a suit for damages pursuant to 42 U.S.C. § 1983. Such relief satisfies the directive for a district court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Simmons, supra*, at 869. Although this Court is aware that in bringing such a suit the petitioner may encounter claims of

qualified immunity and/or an absence of action under color of state law,[5] it finds that such potential impediments most probably would not be enough to persuade this Court to disallow a section 1983 action. As the United States Court of Appeals for the Second Circuit has stated—"[n]ot every constitutional violation results in a recovery." *Diaz, supra*, at 654.

Accordingly—and affirming the findings in the R & R—it is hereby ORDERED that the instant Petition for a writ of habeas corpus is denied but that the petitioner may, within sixty days, recast his present claims in a complaint for damages pursuant to 42 U.S.C. § 1983.

---

**3.** An alternative writ that usually is available in delayed appeal cases is one directing the State court to hear the appeal within a specified time period or to release the prisoner. *See, e.g., Wheeler, supra*, at 1382; *see also Simmons, supra*, at 869. However, this remedy is obviously unavailable when, as here, the appeal has been heard and resolved.

**4.** The petitioner asserts that requiring him to show actual prejudice to the appeal itself is overly burdensome because it would require him to argue the merits of his appeal before this Court and that such arguments would be dis-

missed as involving "exhausted and unexhausted claims and non-justiciable state law claims." Petitioner's Objections to the R & R at 3. This Court realizes that it is a substantial burden for the petitioner to show that, but for the delay, the conviction would have been reversed. However, the petitioner has made no showing whatsoever that the delay itself affected the appeal. And to the extent the delay caused prejudice in the form of anxiety, such is properly remedied through an action for damages. *See, infra.*

**5.** The Bureau's attorney-employees, if sued, might tenably assert that they did not "act" under color of state law.