Alexander **ALLEN, Jr.,**
**Petitioner, Appellant,**

v.

**COMMONWEALTH OF MASSACHU-SETTS, Respondent, Appellee.**

**No. 90–1247.**

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1990.
Decided Feb. 19, 1991.

---

William Shields (Court-appointed), with whom Day, Berry & Howard, was on brief, for petitioner, appellant.

Judy G. Zeprun, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., was on brief, for respondent, appellee.

Before TORRUELLA and CYR, Circuit Judges, and RE,* Judge.

RE, Chief Judge:

Petitioner-appellant, Alexander Allen, Jr., appeals from an order of the United States District Court for the District of Massachusetts which denied his petition for a writ of habeas corpus.

Alleging that he was denied a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and the effective assistance of counsel in violation of the sixth and fourteenth amendments, Allen contends that the district court erred in denying him a writ of habeas corpus. Specifically, Allen asserts that the instructions given to the jury "created a substantial risk of a miscarriage of justice," and that his counsel was ineffective since he failed to object to the erroneous jury instructions, and failed to move to suppress the initial out-of-court identification of Allen.

The first question presented on this appeal is whether Allen has procedurally defaulted on the issue of the jury instructions. Since we conclude that Allen has not procedurally defaulted, we must consider whether the trial court's jury instructions improperly shifted the burden of proof, thereby creating a substantial risk of a miscarriage of justice.

The second question presented is whether Allen's counsel's failure to object to the jury instructions, or his failure to move to suppress the initial out of court identification of Allen, constituted ineffective assistance of counsel.

We hold that the trial court's jury instructions did not shift the burden of proof, and did not create a substantial risk of a miscarriage of justice. We also hold that neither Allen's counsel's failure to object to the jury instructions, nor his counsel's failure to move to suppress the out of court identification of Allen, constituted ineffective assistance of counsel. Hence, we affirm the district court's denial of Allen's petition for a writ of habeas corpus.

## BACKGROUND

Alexander Allen, Jr., a taxi driver, was indicted in the Superior Court of Suffolk County, in the Commonwealth of Massachusetts, for assault with intent to murder,

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

and assault and battery, of Richard Rand. At trial, Allen pleaded not guilty.

Lawrence White, a witness for the Commonwealth, testified that, in the early morning hours of May 31, 1983, he and Richard Rand were in a car driving through Boston, and that at approximately 4:30 A.M. they stopped their car on Tremont Street to look for prostitutes. White stated that Rand got out of the car, approached a woman standing on the street corner, and left with her.

White testified that, approximately fifteen minutes later, Rand returned to the car, "staggering and walking very laboredly." He further testified that Rand had blood on his chest and neck. White stated that Rand looked into White's eyes, "and then he just fell over backwards" onto the road. White testified that he pulled Rand out of the way of oncoming traffic and then noticed that there were three "large holes around the center of his chest."

The Commonwealth also presented the testimony of Stephen Pupek, a self-employed cleaner of stores and restaurants. Pupek testified that, at approximately 5:00 A.M. on May 31, 1983, he was driving in the Tremont Street area of Boston, on his way to a job. Pupek stated that, while stopped at a red light, he witnessed a fight between a black man and a white man. He stated that the fight occurred in an area lit by streetlights.

Pupek testified that, from a distance of approximately twenty feet, he observed a white man pull a black man from the driver's seat of a taxi. He stated that, once they were out of the taxi, "[t]hey started pushing and shoving each other." He then saw the black man throw the white man onto the ground and sit down on top of him. Pupek stated that from a distance of ten feet he observed the black man then raise his hand "into the air and come down into the white male's chest three times." He then saw the black man return to the taxi, and the white man stand up holding his chest. Pupek testified that he then drove away from the scene, and returned within the hour.

Pupek stated that when he returned he saw several police officers who were apparently investigating the fight. Pupek testified that after conversing with the officers he was taken to a police station. Pupek stated that while at the police station, he was shown a vehicle. Pupek identified the vehicle as the taxi in which Allen was seated prior to the incident. At the police station, Pupek also identified Allen, who had been taken into custody, as the black man involved in the fight.

Allen testified in his own defense. He stated that, on May 31, 1983, he was sleeping in his taxi when he was awakened and pulled out of the taxi by a white man. Allen added that he was afraid that he was being robbed, and he began struggling with the white man. Allen denied stabbing the white man. He testified that a prostitute intervened, and that she stabbed the white man. Allen's testimony was corroborated by that of Jeremiah Farrell, a fellow taxi driver, who stated that he had witnessed the incident.

The jury convicted Allen of assault with intent to murder, and assault and battery. The court entered a verdict of guilty, and Allen was sentenced to a term of 16 to 20 years for assault with intent to murder, and 7 to 10 years for assault and battery, the sentences to run concurrently.

Alleging that the trial court erred in denying his motion for a directed verdict on both counts, Allen appealed his convictions to the Massachusetts Appeals Court. He contended that the trial court erroneously instructed the jury on the assault and battery charge, on the defense of self-defense, and on the concepts of provocation and malice. Allen contended that the erroneous jury instructions created a substantial risk of a miscarriage of justice. See Commonwealth v. Allen, No. 85–82, slip op. at 1 (Mass.App.Ct. Aug. 1, 1985). Allen also contended that he had been denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

The Appeals Court reviewed the evidence presented at trial, and concluded that there was sufficient evidence for a reasonable

jury to conclude beyond a reasonable doubt that Allen was guilty of the crimes charged. Hence, the Appeals Court determined that the trial court did not err in denying Allen's motion for a directed verdict. *See id.* at 2–3.

The Appeals Court also rejected Allen's claims that the jury instructions on the assault and battery charge and on the defense of self-defense created a substantial risk of a miscarriage of justice by shifting the burden of proof to the defendant. The court noted that the trial court's instructions were proper, and that the court had given "clear and complete instructions on the presumption of innocence and proof beyond a reasonable doubt...." *Id.* at 4.

The Appeals Court also rejected Allen's claim that the jury instructions on the concepts of "provocation" and "malice" were improper. The Appeals Court acknowledged that the trial court had erred in its instructions on the concept of malice, but nevertheless found that, from the evidence presented at trial, "the inference was overwhelming that the attacker intended to kill the victim, rather than merely to wound him." *Id.* at 6. Therefore, the Appeals Court, after considering the significant issues presented to the jury, concluded that "the erroneous instruction on malice and the absence of a clear instruction on the specific intent to kill could not have influenced the jury's verdict here." *Id.* at 7.

Finally, the court also concluded that Allen had not been denied effective assistance of counsel since, even if his counsel had objected, the objection would not have altered the result of the trial. *See id.* at 8.

Subsequently, the Supreme Judicial Court of Massachusetts denied Allen's application for further review. *See Commonwealth v. Allen,* 396 Mass. 1101, 484 N.E.2d 102 (1985).

Allen then filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts. The petition was referred to a magistrate, who granted a hearing.

In his petition, Allen contended that the jury instructions improperly defined the elements of the crime of assault with intent to murder, since the instructions failed to require the Commonwealth to prove intent to cause death, and improperly shifted to the defendant the burden of proof on mitigating circumstances. Allen also contended that he had been denied the effective assistance of counsel.

In a 27–page report and recommendation, the magistrate recommended denying Allen's petition. The magistrate concluded that Allen had failed to establish cause for and prejudice from his procedural default in the state courts, and, hence, was barred from raising a claim of erroneous jury instructions. The magistrate also concluded that Allen had failed to establish ineffective assistance of counsel.

Subsequently, the district court denied the petition for the reasons set forth in the magistrate's report.

## DISCUSSION

### 1. *Jury Instructions*

■ The Commonwealth contends that "the district court correctly determined that Allen was not entitled to habeas relief because he was in procedural default and did not establish cause for or prejudice from his default."

The Supreme Court has noted that "it is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977) (citing *Fox Film Corp. v. Muller,* 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935)). In the context of a federal habeas corpus proceeding, this principle, known as the "adequate and independent state grounds," "has ... excluded from consideration any questions of state *substantive* law, and thus effectively barred federal habeas review where questions of that sort are either the only ones raised by a petitioner or are in themselves dispositive of [the] case." *Id.* (emphasis in original).

In *Wainwright,* the Supreme Court addressed the reviewability of a habeas cor-

pus petition raising federal claims that were not decided by the state court because of procedural defects. *See id.* 433 U.S. at 81–82, 97 S.Ct. at 2503–04. Specifically, in *Wainwright,* the Court held that a state court decision resting on the petitioner's failure, at the criminal trial, to comply with a "contemporaneous objection rule" constituted an adequate and independent state ground. The Court recognized, however, that the petitioner may obtain federal habeas corpus review if he establishes "cause" for his failure to comply with the rule, and resulting actual "prejudice." *See id.* at 87, 97 S.Ct. at 2506. *See also Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976).

As noted by this court, *Wainwright* teaches that a defendant's failure to object to an alleged error of the court at trial prevents judicial review on a petition for a writ of habeas corpus if "1) the state in fact has a 'contemporaneous objection' rule; 2) the state enforces and does not waive the rule; and 3) the defendant fails to show both 'cause' for and 'prejudice' from, not having complied with the rule." *McCown v. Callahan,* 726 F.2d 1, 3 (1st Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984). *See also Puleio v. Vose,* 830 F.2d 1197, 1199 (1st Cir.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988).

It is not disputed that Massachusetts has a "contemporaneous objection" rule. *See Commonwealth v. Fluker,* 377 Mass. 123, 130–31, 385 N.E.2d 256, 261 (1979). *See also McCown,* 726 F.2d at 3. Therefore, we must consider whether, in this case, the Massachusetts courts enforced the Commonwealth's contemporaneous objection rule. *See McCown,* 726 F.2d at 3.

Under Massachusetts law, it is well established that, when a defendant appeals a criminal conviction, the appellate court, without waiving the defendant's procedural default, may review the merits of the case to determine whether there has been a substantial risk of a miscarriage of justice. *See Gardner v. Ponte,* 817 F.2d 183, 188 (1st Cir.) (citing Mass.R.Crim.P. 22 (1980)), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98

L.Ed.2d 134 (1987). This court has held that, in habeas corpus review of convictions from the Massachusetts courts, a Massachusetts appellate court applying the miscarriage of justice standard does not automatically waive the Massachusetts contemporaneous objection rule. *See McLaughlin v. Gabriel,* 726 F.2d 7, 9 (1st Cir.1984). In contrast, "[w]e normally find a waiver of this state ground where the state courts, after reviewing a conviction, affirm ... *on the basis of their own analysis of federal law.*" *Doucette v. Vose,* 842 F.2d 538, 539 (1st Cir.1988) (emphasis added).

Recently, in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court reaffirmed its holding in *Wainwright.* In *Harris,* however, the Supreme Court recognized that it is not always clear whether the state court actually relied on its procedural rules in rendering a judgment. *See id.* 109 S.Ct. at 1043. The *Harris* Court stressed that "a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)). Hence, in this case, we will find a procedural default only if the Massachusetts Appeals Court "clearly and expressly" stated that its judgment rested on Allen's failure to comply with the contemporaneous objection rule. *See Harris,* 109 S.Ct. at 1043.

In *Peterson v. Scully,* 896 F.2d 661 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990), the petitioner appealed from a district court decision denying his petition for a writ of habeas corpus. The petitioner in *Peterson* had been convicted after a jury trial in the New York Supreme Court. On appeal to the Appellate Division of the New York Supreme Court, the petitioner contended that he had been deprived of a fair trial by the trial judge's extensive questioning of the witnesses. The petitioner's conviction was affirmed. *See id.* at 662.

On the petitioner's appeal from the district court's denial of his petition for a writ of habeas corpus, the United States Court of Appeals for the Second Circuit noted that New York has a contemporaneous objection rule, and that the petitioner, who did not object to the trial judge's questioning of the witnesses at trial, had failed to comply with the rule. *See id.* at 663. The court noted that "[t]he Appellate Division's opinion makes no mention of a procedural bar." *Id.* Hence, the Court of Appeals concluded that, under *Harris*, a federal court may review the merits of the petitioner's claims in his habeas corpus petition. *See id.*

Similarly, in this case, we may review the merits of Allen's petition for a writ of habeas corpus. The decision of the Massachusetts Appeals Court indicates that the court, in reviewing Allen's claims of erroneous jury instructions under the miscarriage of justice standard, neither cited nor referred to the United States Constitution or to any federal cases. It is clear that the court did not "clearly and expressly" state that its decision rested on Allen's failure to comply with the Massachusetts contemporaneous objection rule. Indeed, the opinion of the Massachusetts Appeals Court "makes no mention of a procedural bar." *Peterson*, 896 F.2d at 663. Hence, under *Harris*, we conclude that there was no procedural default.

■ Having concluded that there was no procedural default we must consider whether the trial court's jury instructions improperly shifted the burden of proof, thereby creating a substantial risk of a miscarriage of justice.

Allen contends that he was prejudiced by the jury instructions at trial since the trial court's use of "finding" language was insufficient to instruct the jury that the Commonwealth must prove every element of the crimes charged beyond a reasonable doubt. Specifically, Allen contends that the court frequently instructed the jury that it must "find" certain facts to be true, rather than instructing the jury that the prosecution must prove those facts. He asserts that, consequently, the burden of proof was shifted, and the court placed on the petitioner the burden of proving facts that would negate guilt, rather than placing on the Commonwealth the burden of proving every element of the crimes charged beyond a reasonable doubt.

We do not agree. We conclude that the trial court's use of "finding" language in the jury instructions did not create a substantial risk of a miscarriage of justice. A review of the transcript indicates that the jury was carefully and fully instructed on the burden of proof. As noted by the magistrate in his report and recommendation, "the trial judge informed the jury that the burden of proof was on the Commonwealth as to 'each and every element of the crimes charged' ... no less than thirteen times throughout the course of the instructions." In addition, the jury was carefully instructed as to the presumption of innocence accorded to Allen. Furthermore, the Supreme Judicial Court of Massachusetts has noted that the use of "finding language" constitutes harmless error when the language is used only for "delineating the elements of a particular offense that it was up to the Commonwealth to establish, and [the language was] immediately preceded or succeeded by a recitation that the burden of proof was on the Commonwealth." *Commonwealth v. Albert*, 391 Mass. 853, 859, 466 N.E.2d 78, 83 (1984).

■ Allen also contends that the trial court's instructions on the definition of malice, which were part of the trial court's instructions on the crime of assault with intent to murder, created a substantial risk of a miscarriage of justice. Allen asserts that "[t]he court impermissibly lightened the prosecution's burden of proof by permitting the jury to find malice upon proof of any unexcused intent to inflict any type of injury."

We note that the trial court erred in instructing the jury in one instance that "malice" does not require intent to cause death. It is important to note, however, "that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141,

146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The question to be decided is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400.

It is evident, from a review of the entire instructions to the jury on the crime of assault with intent to murder, that the trial court's instructions on the concept of malice were effectively corrected by subsequent instructions, and hence did not create a substantial risk of a miscarriage of justice. In its instructions to the jury on the crime of assault with intent to murder, the court stated that the prosecution must prove all elements of the crime, including the specific intent to murder, beyond a reasonable doubt. The court also carefully instructed the jury on the difference between the crime of assault with intent to murder, which requires the specific intent to murder, and the lesser included offense of assault with intent to kill.

We conclude that the trial court's jury instructions did not create a substantial risk of a miscarriage of justice.

### 2. *Ineffective Assistance of Counsel*

Allen also contends that his sixth amendment rights were violated since he received ineffective assistance of counsel. In support of his contention, Allen states that his counsel failed to object to the jury instructions, and "failed to move to suppress evidence from an unconstitutional identification procedure which was the foundation of the Commonwealth's case."

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standards for determining whether, in habeas corpus petitions, a petitioner received ineffective assistance of counsel. Under *Strickland,* Allen must first show that his counsel at trial was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Allen must then establish that he was prejudiced by counsel's deficiency to the extent "that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable." *Id.* The *Strickland* Court noted that "[u]nless [the petitioner] makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The *Strickland* Court recognized that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. The Court explained that:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *See generally Casale v. Fair,* 833 F.2d 386, 391–92 (1st Cir.1987).

Our analysis reveals that the failure of Allen's counsel to object to the jury instructions did not prejudice Allen. Therefore, we must consider whether counsel's failure to object to Pupek's pretrial identification of Allen constituted ineffective assistance of counsel.

■ Early in the morning of May 31, 1983, after returning to the scene of the fight which he had witnessed earlier, Pupek conversed with police officers. Pupek was then taken to the police station where he identified Allen as the man whom he had witnessed attacking Rand. At trial, Allen's counsel did not object to Pupek's testimony about the identification. Allen now asserts that "[t]he record suggests that the one-on-one identification was unreasonably suggestive and, therefore, constitutionally tainted."

We have noted that a pretrial identification made during a staged show-up may be unnecessarily suggestive. *See Velez v. Schmer,* 724 F.2d 249, 251 (1st Cir.1984). The question, therefore, is "whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." *United States v. Drougas,* 748 F.2d 8, 27 (1st Cir.1984). Under *Drougas,* we must specifically consider:

(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.* (citing *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)).

In this case, a review of the transcript indicates that Pupek's pretrial identification of Allen was reliable. Pupek had an adequate opportunity to view the attacker, and he provided a detailed description of the fight. On cross-examination, his testimony was unshaken and consistent. Furthermore, his identification of Allen occurred on the same morning that he witnessed the altercation.

Additionally, Allen's counsel's failure to object to the pretrial identification may be the result of trial strategy adopted by Allen. Allen testified in his own defense, and admitted that he was involved in a fight with a white man at the time and place that Pupek observed the fight. The only other eyewitness, Jeremiah Farrell, who testified for the defense, corroborated Allen's testimony that Allen had been in a fight with a white man.

## CONCLUSION

We hold that the trial court's jury instructions did not shift the burden of proof, and did not create a substantial risk of a miscarriage of justice. We also hold that neither Allen's counsel's failure to object to the jury instructions, nor counsel's failure

to move to suppress the out of court identification of Allen, constituted ineffective assistance of counsel. Hence, we affirm the district court's denial of Allen's petition for a writ of habeas corpus.