Dated October 25, 1995.

Gregory LeBLANC, Petitioner,

v.

Richard GRELOTTI, Respondent.

Civ. A. No. 90–10460–NG.

United States District Court,
D. Massachusetts.

Dec. 26, 1995.

Gregory LeBlanc, Bridgewater, MA, pro se.

Michael A. Murphy, Michael A. Murphy & Associates, Boston, MA, for Gregory Le-Blanc.

Sandra L. Hautanen, Ellyn H. Lazar, Attorney General's Office, Boston, MA, Elisabeth J. Medvedow, Attorney General's Office, Criminal Bureau, Boston, MA, for Richard G.J. Grelotti.

GERTNER, District Judge.

Adopted.

### REPORT AND RECOMMENDATION ON MOTION TO DISMISS REMAINING CLAIMS 1, 2 AND 4 (# 10)

COLLINGS, United States Magistrate Judge.

## I. INTRODUCTION

The above captioned matter is before the undersigned for a report and recommendation on the merits of the remaining claims (Grounds 1, 2 and 4) of Gregory LeBlanc's [1] petition for a writ of habeas corpus under the provisions of 28 U.S.C. § 2241 (1988).[2] Specifically, in Grounds 1 and 2, the petitioner claims that delay in processing his appeal deprived him of his right to due process of law. In Ground 4, he alleges that he was denied effective assistance of John B. Shyavitz, Esquire, an attorney who at one point was appointed to represent the petitioner on appeal. As a consequence of these alleged

---

1. Hereinafter, "the petitioner."

2. Other claims were either dismissed or waived for failure to exhaust. (See # 47)

errors, the petitioner requests that he be released from the sentence imposed or, in the alternative, that his sentence be reduced for the period of the delay.

The respondent, Richard Grelotti, has moved to dismiss the petition on the grounds that the alleged delay and alleged ineffective assistance of counsel did not result in prejudice to the petitioner and, therefore, fail to rise to a level sufficient to warrant a grant of habeas corpus relief. (*See* # 56)

For the reasons stated below, I find that the delay petitioner presently complains of, while certainly not countenanced by the Court, is not attended by the requisite prejudice to him which would warrant a grant of habeas corpus relief. Similarly, absent a showing of prejudice to the petitioner, the allegation of ineffective assistance of counsel by Attorney Shyavitz does not warrant habeas corpus relief. Accordingly, I shall recommend that respondent's motion to dismiss (# 10) the remaining grounds of the petition be allowed.

## II. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

On September 23, 1983, the petitioner was convicted by a jury in Salem Superior Court of two counts of aggravated rape, one count of rape, and one count of assault by means of a dangerous weapon. He was sentenced to 12 to 20 years at MCI, Walpole. (Joint Statement, Exh. A, ¶ 3)[3]

The petitioner filed a timely notice of appeal on October 20, 1983. At that time, he also requested a copy of his trial transcript, and the same was ordered by the Essex County Clerk's Office. (Joint Statement, ¶ 4)

On November 2, 1983, Elliot Weinstein, Esquire, who had represented the petitioner as retained counsel at trial, was appointed to represent him on his direct appeal. On November 8, 1993, petitioner requested the trial transcripts and the transcripts from the pretrial suppression hearing. The Clerk's Office

ordered the trial transcripts, but due to an oversight, did not order the transcripts of the pretrial suppression hearing. (Joint Statement, ¶ 5)

Attorney Weinstein withdrew from the case soon thereafter, and the court appointed new appellate counsel, Attorney John Shyavitz on May 29, 1984. The trial transcripts were forwarded to Attorney Shyavitz in May of 1984. (Joint Statement, ¶¶ 6 & 7)

On June 11, 1984, petitioner sought a stay of his direct appeal pending the filing and disposition on his Rule 30 Motion for New Trial on the grounds of ineffective assistance of trial counsel. (Joint Statement, ¶¶ 8 & 9) Hearings on the Rule 30 motion were held on October 31, 1984 and November 27, 1984; the motion was denied (Colicchio, J.) on December 11, 1984. (Joint Statement, ¶¶ 9 & 10) The defendant requested Attorney Shyavitz to seek appellate review of the denial; no notice of appeal was filed. (Joint Statement, ¶ 11)

In the spring of 1985, Attorney Shyavitz learned that the Clerk's Office had never received any notice of the appeal. Attorney Shyavitz claims to have mailed one and showed the Clerk a copy of what he had purportedly sent. The Clerk disregarded the notice. At Attorney Shyavitz's insistence, however, the Clerk ordered the transcripts of the hearings on the new trial motion. (Joint Statement, ¶¶ 11, 12 & 13)

Subsequently, the transcript from the November 27, 1984 hearing was filed with the Superior Court Clerk's Office; the October 31, 1984 hearing transcript was not. Between May 1985 and September 1987, the Clerk's Office made several requests to the court reporter for the missing transcript to no avail. Similarly, Attorney Shyavitz repeatedly inquired at the Clerk's Office as to the status of the missing transcript. The Clerk's Office apparently thought Attorney Shyavitz was inquiring about the missing transcript from the October 31, 1984 hearing

---

3. The "Joint Statement" refers to the Defendant's and Commonwealth's Stipulations of Facts filed in the Essex Superior Court. It was signed on May 9, 1989 by the Assistant District Attorney and Michele Leavitt, Esquire, who had been appointed to represent the petitioner on

February 22, 1989. The "Joint Statement" is Exhibit A to the Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, # 56. Hereinafter, the document will be cited as "Joint Statement, ¶——."

on the new trial motion and not the pretrial suppression hearing transcript which had never been ordered. (Joint Statement, ¶¶ 14, 15, 16 & 18)

In early 1988, the Clerk's Office was informed that the reporter's notes from the October 31, 1984 hearing were missing, and thus a transcript could not be prepared. The Clerk informed Attorney Shyavitz of this fact. However, he apparently still thought that the missing notes were from the pretrial suppression hearing. (Joint Statement, ¶¶ 19 & 20)

On March 23, 1988, the petitioner filed a second motion for new trial based on the missing pretrial suppression hearing transcript. On April 21, 1988, Assistant District Attorney Margaret Perry recognized the confusion surrounding the hearing transcripts. Upon learning that the notes from the pretrial hearing were in fact still available, ADA Perry apprised both the Clerk's Office and Attorney Shyavitz of the situation. On August 1, 1988, the pretrial transcripts were filed. Soon thereafter, on August 18, 1988, the petitioner's appeal was docketed in the Massachusetts Appeals Court. (Joint Statement, ¶¶ 28–33)

Petitioner then filed a *third motion for new trial*, accompanied by a motion for release on bail due to the five year delay in docketing his appeal,[4] a motion to dismiss and a motion to resurrect his direct appeal. On November 3, 1988, petitioner also filed a *pro se* motion for appointment of new counsel. The deadline for submission of petitioner's brief to the Massachusetts Appeals Court expired on November 29, 1988. Attorney Shyavitz did not file a brief or seek an extension. (Joint Statement, ¶¶ 34–37)

In December, 1988, the petitioner again sought appointment of new counsel. On January 18, 1989, the Appeals Court commenced proceedings to dismiss petitioner's appeal for failure to prosecute pursuant to Standing Rule 17A. The District Attorney moved the Appeals Court to refrain from dismissing the appeal and requested that the case be referred to the Superior Court for appointment of new counsel. The Appeals Court temporarily stayed the dismissal of the appeal. (Joint Statement, ¶¶ 36–39)

In January, 1989 petitioner filed a *pro se* motion for a writ of habeas corpus as well as a motion for appointment of new counsel in the Massachusetts Supreme Judicial Court ("SJC") pursuant to G.L. c. 211, § 3. The SJC transferred the case to the Superior Court on January 30, 1989. (Joint Statement, ¶ 40)

On February 22, 1989, the court appointed new counsel to represent petitioner on both his appeal and post-conviction motions. The Appeals Court thereafter dismissed the petitioner's appeal for failure to prosecute. Again, at the joint request of new counsel and the District Attorney's Office, the appeal was reinstated on March 28, 1989. (Joint Statement, ¶¶ 41 & 42)

On May 19, 1989, the petitioner filed a fourth Motion for Post–Conviction Relief. (Findings of Fact, Rulings of Law, and Conclusions, Exh. B at p. 36)[5] The Superior Court (Ronan, J.) denied the motion after a hearing. He found that the Commonwealth, through the Essex County Clerk's Office, was responsible for the continued delay from December 11, 1984 through April 21, 1989[6] and that the petitioner had been denied effective assistance of counsel from December 11, 1984, until March 8, 1989.[7] However, he further found and concluded that the petitioner's rights had not been violated to such an extent that dismissal of the indictments was warranted. The petitioner filed a timely notice of appeal from the denial of this motion.

On September 27, 1989, a single justice of the Massachusetts Appeals Court (Kass, J.) consolidated the direct appeal with petitioner's appeal from the denial of the post-conviction motion. On January 19, 1990, in an unpublished opinion, the Massachusetts Appeals Court affirmed petitioner's conviction.

---

4. This motion was heard and denied by the trial judge on September 23, 1988. (Joint Statement, ¶ 35)

5. Exhibit B to # 56.

6. Exhibit B at p. 43.

7. Exhibit B at p. 41.

Petitioner's application for further appellate review was denied in 1990.

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Delay in Processing Appeal

In determining whether an unnecessary pre-trial delay constitutes a due process violation, courts apply the balancing test enunciated by the Supreme Court in *Barker v. Wingo* wherein courts consider 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted his right to a timely appeal; and 4) the prejudice to the defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972).  A number of circuits have expressly extended the use of this test to delays arising in the processing of post-conviction appeals.  *See Simmons v. Reynolds*, 898 F.2d 865, 868 (2 Cir., 1990); *U.S. v. Johnson*, 732 F.2d 379, 381 (4 Cir., 1984); *Rheuark v. Shaw*, 628 F.2d 297, 302–03 (5 Cir., 1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981); *United States v. Reese*, 568 F.2d 1246, 1253 (6 Cir., 1977); *Harris v. Champion*, 15 F.3d 1538, 1546–47 (10 Cir., 1994).  The First Circuit, however, has never explicitly done so.  Nevertheless, the First Circuit has demonstrated that it examines such cases on a case by case basis applying factors similar to those employed in *Barker v. Wingo*.  *See Morales Roque v. People of Puerto Rico*, 558 F.2d 606, 607 (1 Cir., 1976) *citing Barker v. Wingo*, 407 U.S. at 514, 92 S.Ct. at 2182; *see also United States v. Pratt*, 645 F.2d 89, 91 (1 Cir., 1981) *citing Layne v. Gunter*, 559 F.2d 850 (1 Cir., 1977); *Odsen v. Moore*, 445 F.2d 806, 807 (1 Cir., 1971).

In *Harris v. Champion, supra*, the Tenth Circuit elaborated on the *Barker* test in the context of post-conviction appeal delays and provided, in general, a well reasoned framework for evaluating alleged violations of a defendant's due process rights in the post-conviction appeals context.  The modified test applies the four factors of the *Barker* test, but tempers the fourth factor to "reflect the interests sought to be protected by an appeal 'unencumbered by excessive delay.' " *Harris*, 15 F.3d at 1559.  This approach is in accord with that of other jurisdictions which give additional emphasis to the prejudice prong of the test.  *See Rheuark*, 628 F.2d at 303, fn. 6; *United States v. Tucker*, 8 F.3d 673, 676 (9 Cir., 1993) *quoting United States v. Antoine*, 906 F.2d 1379, 1382 (9 Cir., 1990).

■ The modified test requires consideration of whether the petitioner was prejudiced by the delay because he 1) suffered oppressive incarceration pending appeal; 2) suffered constitutionally cognizable anxiety and concern while awaiting the outcome of his or her appeal; and 3) had the grounds for his appeal or his defenses in the event of reversal and retrial impaired.  *Harris*, 15 F.3d at 1559.

#### B.  Ineffective Assistance of Counsel

A defendant who is convicted and has an appeal of right is entitled to effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985).  In the *Evitts* case, the Supreme Court did not have to determine the appropriate standard to be applied to ineffective assistance of appellate counsel claims because it was conceded that the counsel in that case was ineffective.  *Evitts*, 469 U.S. at 392, 105 S.Ct. at 833–34.  However, there is no reason not to employ the standard generally applied to ineffective assistance claims as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In *Strickland*, the Supreme Court enunciated a two-part test to be applied to claims of ineffective assistance of counsel.  *See also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985) (applying *Strickland* in the habeas context).  For habeas corpus relief based on ineffective assistance of counsel to be warranted, a petitioner must first demonstrate that his counsel's performance lacked a reasonable degree of proficiency such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *see also Allen v. Commonwealth of Massachusetts*, 926 F.2d 74, 80 (1 Cir., 1991).  Second, the petitioner must show that the defi-

ciency, once established, was prejudicial to the extent that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *see also Allen,* 926 F.2d at 80. To establish such prejudice, the Court held, a petitioner must be able to show that there was a reasonable probability (one sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

## IV. APPLYING THE LAW TO THE FACTS OF PETITIONER'S CASE

### A. Delay in Processing Petitioner's Appeal

■ In applying the modified *Barker v. Wingo* test to the facts of the instant case, the Court accepts Judge Ronan's findings that there was unexcused delay from December 11, 1984 to April 21, 1989, a period of four years, four months. That amount of delay in processing petitioner's appeal is inordinate and warrants further inquiry into the possibility of a due process violation. Second, while it appears the delay is at least partially the result of a misunderstanding between petitioner's trial counsel and the Clerk's Office, it nonetheless appears that the majority of the delay in this instance is, as Judge Ronan found, "fairly chargeable" to the Clerk of Courts and Attorney Shyavitz who was appointed by the court. (Exh. B at pp. 37, 43) And lastly, there is ample evidence to indicate that the petitioner took substantial steps to assert his rights and urge the timely disposition of his case. The foregoing factors all weigh against the respondent and support petitioner's claim.

However, the final consideration, the extent of the prejudice to the petitioner, requires further analysis. Although no single factor is dispositive, "[t]he fourth inquiry is the most important: 'a due process violation cannot be established absent a showing of prejudice to the appellant.'" *Tucker,* 8 F.3d at 676, *quoting Antoine,* 906 F.2d at 1382. Here, applying the three factors denoted in

the cases,[8] the petitioner fails to establish that he was prejudiced by the delay in hearing his appeal.

First, the petitioner's incarceration was not oppressive. In order to establish prejudice on this basis the petitioner must "assert a colorable claim that would warrant a reversal of his or her conviction or a reduction in sentence that would entitle the petitioner to immediate release." *Harris,* 15 F.3d at 1547. In this instance, the Court notes that petitioner's claims of ineffective assistance of trial counsel were adequately presented to the Appeals Court. The Appeals Court found "no such error as could call for the reversal of the defendant's convictions." (*See* Appeals Court's Memorandum and Order Pursuant to Rule 1:28, Exh. C to # 56) The Appeals Court went so far as to indicate that petitioner had not "come close to making it appear that trial counsel's performance" was ineffective. (*Id.*) Thus, to the extent that petitioner's claim is premised on prejudice in obtaining appellate review of the alleged ineffective assistance of trial counsel, his claim fails because there is nothing in the record before me that would demonstrate that the delay in appellate proceedings had any effect upon these claims and/or altered the outcome of his appeal. As the Ninth Circuit noted, "... ordinarily a petitioner must make some particularized showing of prejudice to establish a due process violation" and that the "particularized showing [of prejudice] must relate to the events that occurred during the period of delay that was excessive." *Harris,* 15 F.3d at 1547. No such showing has been made in this case.

Notwithstanding petitioner's insistence that his right to a prompt disposition of his case has been violated, he simply offers no evidence that the delay in his ability to perfect his appeal even slightly altered the eventual outcome. There is similarly, despite petitioner's conclusory statement that it is so, no evidence that the delay rendered petitioner's appeal a "meaningless ritual" to use the words of the Supreme Court in *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963). As far as the Court can ascertain, the petitioner makes no

---

8. *See* p. 830, *supra.*

suggestion and offers no evidence to suggest that counsel appointed to replace Attorney Shyavitz on February 22, 1989 and who represented petitioner in his appeal was ineffective in any way.

Relative to the second showing, that of anxiety and concern pending appeal, much of the same reasoning applies. Under the holding of the *Harris* case, in order to succeed in showing "anxiety" and "concern," a petitioner must first assert a colorable state or federal claim that would warrant reversal of the petitioner's conviction or reduction of sentence. *Harris*, 15 F.3d at 1565. As indicated above, such a showing has not been made in this instance. Accordingly, petitioner's allegation of anxiety is not cognizable since "[a] petitioner has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit." *Id.* Thus, under the rationale of *Harris*, the petitioner is not entitled to relief.

While this is the holding in *Harris* respecting the second factor, the stated reason upon which the holding is based, i.e., "a petitioner has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit," is disingenuous. It seems to presuppose that defendants who appeal know in advance that their appeals will be unsuccessful. While this is undoubtedly true in some cases, the majority of defendants do not know before the appellate ruling that it will be adverse to them, and it can readily be inferred that the longer it takes to get an appellate ruling, the longer the period of anxiety will be.

Thus, as an alternative basis for my holding, I rely on the proposition that a petitioner must make a "particularized" showing of anxiety in order to be entitled to relief, a showing not made by the petitioner in the instant case. *See* discussion of the case of *Burkett v. Fulcomer,* 951 F.2d 1431 (3 Cir., 1991), *infra* at pp. 833–35, particularly p. 835.

Lastly, the third consideration, impairment of one's grounds for defense, is simply not implicated in this case. "That delay has impaired a petitioner's ability to mount a defense on retrial is irrelevant ..., if a petitioner has no credible grounds for reversal or retrial." *Harris*, 15 F.3d at 1564. Moreover, where a petitioner's conviction has been affirmed prior to hearing in a federal habeas proceeding, "the petitioner will not be able to show prejudice on retrial because the state appellate court has finally decided there will be no retrial." *Id.*

### B. Ineffective Assistance of Counsel

■ To sustain his claim of ineffective assistance of counsel the petitioner must show "counsel's performance was deficient" and that the "deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. However, since the petitioner must satisfy both prongs of the test, the Supreme Court has held that the Court "need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70.

Thus, as was the case with the analysis of the delay in hearing the appeal, the focus is on any prejudicial effect of the counsel's delay in taking steps to obtain appellate review. It is necessary to answer the question that is central to the *Strickland* test: "[Was] there a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In the instant case, the answer is clearly "no."

The petitioner has made no showing of any prejudicial effect due to the delay on his ability to have the appellate courts consider his appeal fully and fairly. His appeal was perfected, presented by competent counsel, and the appeal was adjudged to be without merit. In sum, the Court finds no evidence of prejudice to petitioner as a result of the admittedly lengthy delay attributable to Attorney Shyavitz's ineffectiveness. A "petitioner is not entitled to relief absent a showing that the briefing delay impaired [his] chances of prevailing on appeal." *See Harris,* 15 F.3d at 1570. No such showing has been made in the instant case.

### V. A WORD ABOUT THE CASE OF *DOGGETT V. UNITED STATES*

Although not cited by either party, it is of no little interest that the Supreme Court in

*Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) held that in the context of six-year pre-trial delay, a defendant need not prove prejudice in order to succeed in gaining a dismissal of the charges on speedy trial grounds. In cases involving such an inordinate delay, prejudice is presumed. "We generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693. The Government's "... negligence [is not] automatically tolerable because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* Although the Government would have the opportunity to rebut the presumption of prejudice, the Supreme Court indicated that the task is practically impossible. Justice Souter wrote:

> While the Government ably counters Doggett's efforts to demonstrate particularized trial prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired.

*Doggett,* at 658, fn. 4, 112 S.Ct. at 2694, fn. 4 (citation omitted).

In the *Harris* case, the Tenth Circuit applied this "presumption of prejudice" in two ways. First, it discussed the presumption in the situation in which a defendant's ability to mount a defense at a retrial was impaired because of the delay from initial conviction to an appellate court's ordering of a retrial. *Harris,* 15 F.3d at 1564. But the Court then wrote:

> That delay impaired a petitioner's ability to mount a defense on retrial is irrelevant, however, if petitioner has no credible grounds for reversal or retrial.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Thus, if a petitioner's conviction has been affirmed by the time the petitioner's claims are heard in the federal habeas proceeding, the petitioner will not be able to show prejudice on retrial because the state appellate court has finally decided that there will be no retrial.

*Harris,* 15 F.3d at 1564.

The Tenth Circuit would not apply the reasoning of *Doggett* in the situation in which there has been inordinate, or, in Justice Souter's words, presumptively prejudicial delay, if, after the delay, there has been an appeal and the conviction had been affirmed. *Id.* (citation omitted). In such circumstances, the petitioner, in order to succeed, must demonstrate that his ability to mount an effective appeal was impaired by the delay; the presumption does not apply.

▉▉▉ In my view, the Tenth Circuit's analysis makes perfect sense. When a trial has occurred, even if there is inordinate post-trial delay, the record of the trial is preserved. On the other hand, when a trial has yet to occur, it is extremely difficult to demonstrate how one might have conducted a defense if the delay had not occurred. When the pre-trial delay is inordinate, prejudice must be presumed. The reasons for presuming prejudice in that situation simply does not appertain to the situation in which an inordinate delay has occurred between conviction and affirmance of that conviction on appeal. In the latter case, the petitioner must demonstrate that the delay has caused an impairment in his ability to present his arguments effectively to the appellate court. As indicated, *supra,* the petitioner has not done so in the instant case.

The second reference to the *Doggett* case in the *Harris* decision concerns prejudice resulting from anxiety a petitioner experiences by inordinate delay. After discussing how various circuit courts have dealt with that issue, the Court of Appeals wrote:

> We think the better approach is to require the petitioner to make some particularized and substantial showing of anxiety and concern, **absent a delay so excessive as to trigger the *Doggett* presumption of prejudice.**

*Harris,* 15 F.3d at 1565 (emphasis supplied).

This statement would seem to indicate that in a case in which the delay was so great as to be presumptively prejudicial, as it was in *Doggett,* and was in the instant case, prejudice in the form of anxiety would be presumed.

However, in the very next paragraph, the Court of Appeals wrote:

A petitioner has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit. Therefore, to establish prejudice resulting from anxiety, a petitioner must **once again** assert a colorable state or federal claim that would warrant reversal of the petitioner's conviction or reduction of sentence to an amount of time less than that taken to adjudicate the appeal.

*Harris*, 15 F.3d at 1565 (emphasis added). I read the second sentence of this quotation as stating that the *Doggett* presumption of prejudice does not apply when the appeal results in an affirmance, even after delays from conviction to affirmance that are comparable to the length of the delays from indictment to trial in the *Doggett* case. On the other hand, where the appeal resulted in something less than an affirmance, the *Doggett* presumption would seem to be fully applicable if the state attempted to conduct further proceedings at the trial level.

■ As I indicated earlier,[9] I am not in agreement with the statement that a defendant "has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit." But I do agree that in the case of an affirmance where there has been no impairment in the ability to mount the appeal, the *Doggett* presumption of prejudice is inapplicable and that a "particularized" showing of anxiety must be made.

## VI.  A DISCUSSION OF THE CASE OF *BURKETT V. FULCOMER*

Petitioner cites the case of *Burkett v. Fulcomer*, 951 F.2d 1431 (3 Cir., 1991), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992) as support for an argument that as a remedy for the inordinate delay, this Court should order a reduction in his sentence equal to the period of inordinate delay. The respondent ignores both the argument and the *Burkett* case in its memorandum.

In *Burkett*, the Third Circuit found that an eighteen month delay between conviction and affirmance of the judgment violated due process. It also found that a nine and a half month delay from arrest to guilty verdict and a twenty-nine month delay from guilty verdict to sentencing violated the Sixth Amendment. The Court found prejudice for both periods of delay in the "oppressive incarceration, anxiety and distress, and possible impact on the defense at retrial" which Burkett suffered. *Burkett*, 951 F.2d at 1445. Specifically, the Court found prejudice because of the delay from sentencing to affirmance in Burkett's "... continued inability to participate in rehabilitative programs, the anxiety of not knowing when his appeal would be decided and the further passage of time affecting his ability to reconstruct his defense." *Burkett*, 951 F.2d at 1445–46.

One interesting point to note is that the Third Circuit is totally silent on the consequences of the affirmance of Burkett's conviction which had occurred before the petition for habeas corpus was filed. It seemingly made no difference to the Court's analysis; in fact, as one aspect of prejudice for the delay between conviction and affirmance, the Court mentions the "further passage of time affecting his ability to reconstruct his defense." *Burkett*, 951 F.2d at 1446. How could this be prejudicial when the affirmance of the conviction eliminated any possibility of a new trial and obviated any need to reconstruct a defense?[10] To the extent that the Court in *Burkett* is intimating that prejudice can be found in the impairment of a defendant to mount a defense at a retrial which will never occur because the conviction has been affirmed, I respectfully disagree. As indicated, *supra*, in the situation in which the conviction has been affirmed on appeal, a petitioner, in order to show prejudice, must demonstrate an impairment of the ability to mount his appeal due to the delays.

As indicated, the Third Circuit in *Burkett* found both "oppressive incarceration" and "anxiety" out of excessive delay even though Burkett's conviction was affirmed on appeal and no showing was made that the ability to

9.  *See* p. 832.

10.  Indeed, this point is made by Judge Alito in

dissent.  *Burkett*, 951 F.2d at 1450–51.

present the appeal was impaired. This result sets the Third Circuit apart from the Tenth Circuit's conclusions in the *Harris* case to the effect that there is no need to get into the question of "oppressive incarceration" or "anxiety" if the petitioner's appeal has been heard, the conviction has been affirmed, and there was no impairment of the ability to present the appeal. *Harris,* 15 F.3d at 1565.[11] But since the petitioner in the instant case relies on *Burkett* in support of his contention that he should be granted a reduction in his sentence for the period of the delay, the Court must consider whether he has proven "oppressive incarceration" or "anxiety" to the extent that relief could be granted under the Third Circuit's analysis.

To prove "oppressive incarceration" a petitioner:

> ... must make a particularized showing that the incarceration is oppressive beyond that experienced by others awaiting outcome of their appeals. That is, the petitioner must show some oppressiveness unique to his or her situation that is directly attributable to the excessive delay in adjudicating petitioner's appeal.

*Harris,* 15 F.3d at 1538.

The Third Circuit found that Burkett had demonstrated "oppressive incarceration" by showing that he was held in local facilities during the period of delay rather than a state facility to which he would have been transferred as soon as his conviction was affirmed. The Court found merit in Burkett's contentions that:

> ... he was unable to avail himself of institutional programs, critical to his rehabilitation, available through the state but not the county penal system, namely alcohol and sex offender programs in which he was eventually able to participate when incarcerated in the state prison.

*Burkett,* 951 F.2d at 1443.

Also found meritorious was Burkett's contention that he was deprived of "visiting privi-

leges outside the walls of the prison [which] ... are available through the state system to a particular classification of inmates." *Id.*

In the instant case, accepting the Third Circuit's analysis, the petitioner has made no showing that he suffered "oppressive incarceration." He was transferred to Walpole upon conviction; the delay in hearing the appeal, so far as appears from the record, had no effect on the place or conditions of his confinement. In sum, even applying the law as set forth in *Burkett,* the petitioner is not entitled to any relief on the theory that he suffered "oppressive incarceration."

In the *Harris* case, the Tenth Circuit surveyed the law with respect to the showing a petitioner must make to prove "anxiety," writing:

> The courts appear split on the showing of anxiety that a petitioner must make. The Ninth Circuit, for example, requires a showing of "particular anxiety" distinguishable from that "of any other prisoner awaiting the outcome of an appeal." *Antoine,* 906 F.2d at 1383; *see also Tucker,* 8 F.3d at 676; *Coe [v. Thurman* ], 922 F.2d [528] at 532 [ (9th Cir.1990) ]. In *Burkett II,* the Third Circuit concluded that the petitioner had established prejudice in part because he was able "to detail anxiety related to the processing of his case postconviction." 951 F.2d at 1447. The Second Circuit, on the other hand, has affirmed findings of prejudice based solely on the district court's *assumption* that the delay of four or more years worried the petitioner, who awaited hopefully the outcome of the appeal. *Yourdon v. Kelly,* 969 F.2d 1042 (2d Cir.1992) (table), *aff'g,* 769 F.Supp. 112, 115 (W.D.N.Y.1991); *Snyder v. Kelly,* 972 F.2d 1328 (2d Cir.1992) (table), *aff'g* 769 F.Supp. 108, 111 (W.D.N.Y., 1991).

*Harris,* 15 F.3d at 1564–65.

Applying the law as set forth by the Third, Ninth and Tenth Circuits that a "particular-

---

**11.** It is interesting to note that the Tenth Circuit in the *Harris* case recognized that "oppressive incarceration" may by found on the basis which the Court in *Burkett* so found, but is silent on the Third Circuit's view, which is contrary to its holding in *Harris,* that "oppressive incarcera-

tion" can form the basis of prejudice even when the appeal has been heard, the conviction has been affirmed, and no impairment on the ability to present the appeal in shown. *Harris,* 15 F.3d at 1565, fn. 17.

ized" showing of anxiety is required, I find that the petitioner in the instant case has made no such showing. In Ground 6 of the petition, the petitioner states he suffered "severe anxiety over the delay." This is far too general a statement to meet the burden of making a "particularized" showing. Thus, even if a due process violation can be established by demonstrating "anxiety" even though the appeal has been heard, the conviction affirmed, and no impairment of the ability to present the appeal shown, the petitioner has failed to make the "particularized" showing of anxiety which would entitle him to relief under the holding in *Burkett*.

Lastly, I can find no holding where a general averment of anxiety or an inference of anxiety resulted in habeas corpus relief. While in the two cases from the Second Circuit cases cited by the court in the *Harris*,[12] the district court presumed that additional anxiety was caused by the four year and five year delays in those cases, the court found that no relief could be granted other than to allow the petitioners to bring a separate action under 42 U.S.C. § 1983 against those responsible.[13]

## VII.  CONCLUSION AND RECOMMENDATION

For the reasons stated herein, I hold that the petitioner is not entitled to relief because he has failed to show "prejudice" resulting from the excessive delay. Since his conviction has been affirmed on his appeal, and there is no showing that his ability to present his arguments to the appellate court was impaired by the delay, the *Doggett* presumption is inapplicable, and the petitioner is precluded from relief even if he can show "oppressive incarceration" and "particularized anxiety." *Harris*, 15 F.3d at 1564–1565. Alternatively, even if the affirmance of his conviction does not bar him from obtaining relief, the petitioner in the instant case is not entitled to any relief because he has failed to show "oppressive incarceration" or "particularized anxiety" resulting from the delay.

Lastly, for essentially the same reasons, he has failed to demonstrate that he was prejudiced by any ineffectiveness of Attorney Shyavitz.

I therefore RECOMMEND that the Motion to Dismiss (# 10) be ALLOWED and that the Petition for Writ of Habeas Corpus be DISMISSED.

## VIII.  REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Clerk within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir., 1983). *See also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated:  February 27, 1995

---

**12.** *Yourdon v. Kelly*, 969 F.2d 1042 *aff'g*, 769 F.Supp. 112, 115; *Snyder v. Kelly*, 972 F.2d 1328 *aff'g* 769 F.Supp. 108, 111.

**13.** In view of the Supreme Court's recent decision in *Heck v. Humphrey*, —— U.S. ——, ———, 114 S.Ct. 2364, 2372–73, 129 L.Ed.2d 383 (1994), that avenue of relief has been precluded.